**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| E.M.J.M.,<br>Petitioner,<br>v.<br>MARKWAYNE MULLIN, et al.,<br>Respondents. | No. 5:26-cv-05336-JAK-BFM<br><br>**ORDER ACCEPTING WITH MODIFICATIONS MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION** |

Pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition, the records and files herein, the Magistrate Judge's Report and Recommendation ("R&R" (Dkt. 10)), Petitioner's objections ("Objections" (Dkt. 12)) and Respondents' reply to Petitioner's objections ("Reply" (Dkt. 14)). The recommendations of the Magistrate Judge are adopted with modifications. The R&R is adopted to the extent it recommends (1) granting the Petition (Dkt. 1) and ordering Petitioner E.M.J.M. (A# 206-316-764) immediately released; and (2) granting Petitioner's request to proceed under a pseudonym (Dkt. 3). It is also adopted to the extent it recommends ordering confirmation of release within three days of this Order (Dkt. 10 at 7–8), but from Respondents rather than Petitioner.

## I. Conditions of Release

After review of the Objections and Reply, the R&R is not adopted to the extent it recommends Petitioner's release on "reasonable conditions." *Id.* at 7. Federal courts have "a fair amount of flexibility" in fashioning specific habeas relief. *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005). "[T]he function of a preliminary injunction is to preserve the status quo *ante litem*," namely, "the last, uncontested status which preceded the pending controversy." *Regents of Univ. of Cal. v. Am. Broad. Cos.*, 747 F.2d 511, 514 (9th Cir. 1984) (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 315 F.2d 804, 809 (9th Cir. 1963).

Prior to his detention on August 18, 2026, Petitioner was permitted to remain out of custody, necessarily implying that immigration authorities concluded that Petitioner did not pose a danger to the community or a significant flight risk. *See* 8 U.S.C. § 1232(c)(2) (under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), an unaccompanied noncitizen child "shall be promptly placed in the least restrictive setting that is in the best interest of the child," subject to considerations of flight and danger); Dkt. 1-2. To return to the status quo, Respondents must immediately release Petitioner under the same conditions on which he previously was released.

## II. Notice & Opportunity to Be Heard

Petitioner argues that his re-detention absent a showing of a change in circumstances violated his procedural due process rights. Dkt. 1 ¶¶ 35–42. In the Objections, Petitioners request "injunctive relief requiring at least some notice of a pre-deprivation hearing." Dkt. 12 at 2. The R&R is not adopted to the extent it "declines to recommend future injunctive relief requiring 7-days' notice and the presence of counsel . . . ." Dkt. 10 at 7. The R&R does not decide the merits of "each of Petitioner's claims in all respects; it simply acknowledges that his claims are legally cognizable and factually unrefuted." Dkt. 10 at 6. As such, to determine the process due to Petitioner, it is necessary to assess the merits of Petitioner's

procedural due process claim.

Petitioner "ha[s] procedural due process rights rooted in the Constitution." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176, 1178 (N.D. Cal. 2017), *aff'd* 905 F.3d 1137 (9th Cir. 2018). "[A]ll 'persons' within the United States, including [noncitizens]," have a right to due process, "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

Petitioner entered the country as a minor in December 2013, was apprehended and subsequently released to his father's custody pursuant to the TVPRA. Dkt. 1 ¶¶ 18, 20–21. The TVPRA governs the detention of unaccompanied minors encountered at the border. 8 U.S.C. § 1232. As noted, the statute provides that, in making custody determinations, HHS should consider "danger to self, danger to the community, and risk of flight." 8 U.S.C. § 1232(c)(2)(A). Thus, in releasing Petitioner in December 2013, HHS must have determined that he was not a flight risk or danger to the community. *See Saravia*, 280 F. Supp. 3d at 1176, 1178 ("[Immigration officials] may release the minor to a 'sponsor' . . . so long as the minor is not dangerous . . . . Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). As such, Petitioner has a protected liberty interest in his continued release. *See Guillermo M. R. v. Kaiser*, No. 25-CV-5436, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is inherent in the Due Process Clause"); *see also Chavarria v. Chestnut*, No. 25-CV-1755, 2025 WL 3533606, at *3 (E.D. Cal. Dec. 9, 2025) (collecting cases in which courts in this Circuit found that noncitizens paroled into the country have a liberty interest in their continued release).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976); *see also Hernandez v. Sessions*, 872 F.3d 976,

981 (9th Cir. 2017) ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). To determine the procedures that are sufficient to protect a liberty interest, the *Matthews* test balances three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

As to the first factor, Petitioner has a significant liberty interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" the Due Process Clause protects. *See Hernandez*, 872 F.3d at 990 (quoting *Zadvydas*, 533 U.S. at 690). Petitioner was out of custody for almost 13 years, has no criminal record, married his lawful permanent resident spouse, has an I-130 visa petition and an asylum application pending, and has valid work authorization. Dkt. 1 ¶¶ 1, 18, 19. These ties only strengthened Petitioner's liberty interests since his initial release. Accordingly, Petitioner has a strong interest in remaining free from unnecessary government interference with his liberty.

As to the second factor, there is a significant risk that Petitioner has been deprived of his liberty interest due to error. Petitioner argues that there "was no change in circumstances since Respondents released Petitioner in 2013" and "no evidence that Respondents could have used to make the determination that Petitioner was a flight risk or danger to the community." Dkt. 1 ¶¶ 40, 50. While stopped at a gas station on his way to work on August 18, 2026, an ICE officer

approached Petitioner and showed him a picture of an individual for whom he claimed to be looking. *Id.* ¶ 23. The Petition contends the individual in the picture looked nothing like Petitioner, and it was clear that the officer knew Petitioner was not the photographed individual. *Id.* At the officer's request, Petitioner provided his Real ID and explained and provided documents showing that his immigration proceedings had been administratively closed and subsequently reopened, that he had a master calendar hearing scheduled for April 9, 2027, that he had a valid work permit and that he had a pending visa petition filed by his wife. *Id.* ¶¶ 21, 22, 24. The officer spoke with other individuals for approximately ten minutes and then proceeded to question Petitioner for approximately another 15 minutes. *Id.* ¶ 25. After detaining Petitioner for approximately 30 minutes, the ICE officers arrested him without showing an arrest warrant. *Id.* ¶ 28.

Under these circumstances, the risk of erroneous deprivation is high. Ordinarily, immigration officials require an administrative warrant to effect the civil arrest of a noncitizen. *See Arizona v. United States*, 567 U.S. 387, 408 (2012); 8 U.S.C. § 1126(a). "[I]mmigration enforcement officers may conduct a warrantless civil immigration arrest only if they have probable cause to believe that a person is both in the United States unlawfully *and* an escape risk." *Escobar Molina v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 3d 1, 30 (D.D.C. 2025) (citing 8 U.S.C. § 1357(a)(2)); *see also Urias v. Semaia.*, No. 26-CV-2753, 2026 WL 1710375, at *5 (C.D. Cal. June 10, 2026). It does not appear that the ICE officers had an arrest warrant or probable cause that Petitioner posed a flight risk, nor do Respondents argue that they did. *See* Dkt. 8; *cf. Singh v. Holder*, 638 F.3d 1196, 12025 (9th Cir. 2011), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018) (plurality opinion) (the fact that a noncitizen is subject to a final order of removal without any path to lawful status, and therefore, may have a "diminish[ed]" incentive to "appear for further removal proceedings . . . alone does not constitute clear and convincing evidence" that he poses a flight risk). Additional procedural

safeguards allowing a neutral arbiter to review the facts would likely reduce the possibility of such an erroneous deprivation of a right. This factor thus weighs in Petitioner's favor.

As to the final factor, although providing Petitioner with a pre-deprivation hearing may impose administrative burdens on Respondents, such burdens are substantially outweighed by Petitioner's liberty interests. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). These burdens are also likely to be less significant when Petitioner is already subject to removal proceedings before an immigration judge. *See* Dkt. 1 ¶ 22. Thus, the third *Matthews* factor weighs in Petitioner's favor.

Respondents' argument that "Immigration Judges do not have the legal authority or jurisdiction to conduct a 'pre-deprivation' custody redetermination hearing" (Dkt. 14 at 3) is unpersuasive. "The power to order a bail hearing before an immigration judge is the type of practice and workable remedy within the district court's broad equitable powers." *Mau v. Chertoff*, 562 F. Supp. 2d 1107, 1114 (S.D. Cal. 2008). Pursuant to 8 C.F.R. § 1236.1(d), Immigration Judges are expressly "authorized to exercise the authority" delegated to the Attorney General in 8 U.S.C. § 1226 to either "detain" or "release" on bond persons in removal proceedings.[1]

For the foregoing reasons, to comply with the Due Process Clause, Petitioner must receive notice and an opportunity to be heard prior to his re-detention. These procedural protections do not require a directive by a district court to an Immigration Judge. Rather, they require only that an Immigration Judge exercise

---

[1] Although other regulations state that Immigration Judges do not have the authority to conduct bond hearings in certain situations, 8 C.F.R. § 1003.19(h)(2), Respondents have neither argued nor shown that any of those provisions apply here.

their existing authority to conduct bond hearings to determine whether persons in removal proceedings should be "detain[ed]" or "release[d]" on bond. 8 C.F.R. § 1236.1(d). Respondents cite no authority for their claim that it is "legally impossible for DHS to abide by an order enjoining Respondents from re-detaining [P]etitioner until *after* he is given notice and a pre-deprivation hearing." Dkt. 14 at 4.

Accordingly, the injunction recommended in the R&R is modified such that Respondents are enjoined from attempting to re-detain Petitioner without first providing him notice and an opportunity to be heard on whether detention is justified. *See United States v. Morrison*, 449 U.S. 361, 364 (1981) ("[R]emedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests."); *Lu v. Los Angeles Field Dir.*, No. 26-CV-575, 2026 WL 1455317, at *4 (C.D. Cal. May 7, 2026) (enjoining future re-detention under § 1226(a), without adequate process, based on evidence that similarly situated persons had been re-detained by DHS following release on bond without adequate process).

Accordingly, **IT IS ORDERED**:

1. The Report and Recommendation is adopted with modifications;
2. The Petition (ECF 1) is granted;
3. Petitioner E.M.J.M. (A# 206-316-764) shall be immediately released from immigration detention on Petitioner's prior conditions of release (only those conditions, if any, in place prior to Petitioner's detention on August 18, 2026);
4. Respondents are enjoined from re-detaining Petitioner without notice and a pre-detention hearing before a neutral arbiter at which the government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community;
5. Respondents shall file a status report within three days of this Order to

confirm Petitioner's release in compliance with the Court's Order;

6. Judgment shall be entered consistent with this Order once such confirmation is received;

7. Petitioner's request to proceed under a pseudonym (Dkt. 3) is granted; and

8. The Court Clerk shall serve this Order on all counsel or parties of record.

Dated: October 9, 2026

John A. Kronstadt
United States District Judge